### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-CR-49-CDP |
| | ) |
| RAMIZ ZIJAD HODZIC, | ) |
| SEDINA UNKIC HODZIC, | ) |
| NIHAD ROSIC, | ) |
| MEDIHA MEDY SALKICEVIC, | ) |
| ARMIN HARCEVIC, | ) |
| | ) |
| Defendants. | ) |

### STATUS CONFERENCE

### BEFORE THE HONORABLE DAVID D. NOCE
### UNITED STATES MAGISTRATE JUDGE

### JANUARY 28, 2019

APPEARANCES:

For Plaintiff        Matthew T. Drake, AUSA
                     Howard J. Marcus, AUSA
                     Kenneth R. Tihen, AUSA
                     **OFFICE OF U.S. ATTORNEY**
                     111 South Tenth Street, 20th Floor
                     St. Louis, MO 63102

                     Joshua D. Champagne, AUSA
                     **U.S. DEPARTMENT OF JUSTICE**
                     950 Pennsylvania Avenue, N.W.
                     Washington, DC 20530

**APPEARANCES CONTINUED ON PAGE 2**

*REPORTED BY:*        *Gayle D. Madden, CSR, RDR, CRR*
                     *Official Court Reporter*
                     *United States District Court*
                     *111 South Tenth Street, Third Floor*
                     *St. Louis, MO 63102        (314) 244-7987*
        (Produced by computer-aided mechanical stenography.)

**APPEARANCES CONTINUED:**

```
For Defendant          Diane Dragan, AFPD
Ramiz Zijad Hodzic     Kevin Curran, AFPD
                       Michael Dwyer, AFPD
                       OFFICE OF U.S. PUBLIC DEFENDER
                       1010 Market Street, Suite 200
                       St. Louis, MO  63101


For Defendant          Kim C. Freter, Esq.
Sedina Unkic Hodzic    LAW OFFICE OF KIM C. FRETER
                       225 South Meramec, Suite 1100
                       St. Louis, MO  63105


                       Daniel Schattnik, Esq.
                       3 South 6th Street
                       Wood River, IL  62095


For Defendant          JoAnn Trog, Esq.
Nihad Rosic            MENEES, WHITNEY, BURNET & TROG
                       121 W. Adams
                       Kirkwood, MO  63122


For Defendant          Joan K. Miller, Esq.
Mediha Medy            JOAN K. MILLER, LLC
Salkicevic             1515 N. Warson Road, Suite 249
                       St. Louis, MO  63132


For Defendant          Charles D. Swift, Esq.
Armin Harcevic         CONSTITUTIONAL LAW CENTER FOR MUSLIMS
                       IN AMERICA, INC.
                       833 E. Arapaho Road, Suite 102
                       Richardson, TX  75081
```

1          (Proceedings commenced at 2:10 p.m.)

2          (The following proceedings were held in open court and

3     with the Defendants present.)

4               THE COURT:  In the case of the United States against

5     Ramiz Zijad Hodzic, Sedina Unkic Hodzic, Nihad Rosic, Mediha

6     Medy Salkicevic, and Armin Harcevic, Case No. 4:15-CR-49, the

7     matter is before the Court this afternoon for a hearing on a

8     couple of matters, the first being a taking of the comments

9     from counsel about the status of the case.

10              First of all, let me acknowledge also that here

11    representing the United States is Howard Marcus, Mr. Drake,

12    Matthew Drake, and Joshua Champagne.  Here representing

13    Mr. Hodzic is Diane Dragan.  Here representing Mrs. Hodzic is

14    Kim Freter and Daniel Schattnik.  Here representing Nihad

15    Rosic is JoAnn Trog.  Oh, there she is.  And representing

16    Ms. Salkicevic is Joan Miller.  And Charles Swift is here

17    representing -- let me see here -- Armin Harcevic.

18              All right.  The first thing I want to ask about is

19    the status of discovery again.  Mr. Drake, can you give me the

20    report on whether or not there's been any other disclosure of

21    information to the defense since the last time I asked you

22    that question?

23              MR. DRAKE:  Certainly, Your Honor.  Thank you.  And

24    good afternoon.  Not since the last time we met, but there

25    will be today, Judge.  We have a disc which has some

4

1  additional Bosnia-to-English translations of the underlying

2  evidence and materials.  The Government is also disclosing the

3  interviews that we mentioned in our last hearing of Jasmin

4  Jaservitch, who is a witness that is the subject of the

5  depositions we're about to talk about.  The Government had

6  interviewed him previously and promised the defense we would

7  turn over his interview in advance of the depositions, and

8  we're doing that today.  It also has just some miscellaneous

9  discovery that we've come up with that has previously not been

10  turned over, a couple of minor surveillance reports, things

11  like that, but, again, we're just continuing with our ongoing

12  discovery obligations, but as I've represented to the Court,

13  the vast majority, the bulk of the material, has previously

14  been turned over, Judge.

15          THE COURT:  All right.  And that includes material

16  that you intend -- that you would intend or would offer into

17  evidence at trial?

18          MR. DRAKE:  Yes, Judge.

19          THE COURT:  Okay.  And so, substantially, you have

20  performed your duty in providing information to the defense?

21          MR. DRAKE:  Yes, Judge.  I mean, yes, Your Honor, is

22  the quick and easy answer.  As stuff comes to our attention,

23  there have been a couple additional media materials or

24  something that we might have found that we think is relevant

25  but maybe we wouldn't even use at trial but we think is

1    arguably relevant, and we're continuing that obligation and

2    turning those things over.

3           THE COURT:  All right.  And also, before I forget,

4    all of the Defendants who remain in the case are present in

5    the courtroom.  Is that a fair statement?

6           MR. DRAKE:  Yes, Judge.

7           THE COURT:  All right.  Let me ask you; on a second

8    matter, just to make the record clear, you have disclosed to

9    defense counsel the Government's offers for guilty plea

10   agreements.  Is that a fair statement?

11          MR. DRAKE:  Yes, Judge.  And if you wouldn't mind

12   permitting me an opportunity to elaborate on that, we have

13   entered into resolution discussions with all Defendants.

14   Those have gone through many iterations.  New counsel has been

15   appointed as recently as our last meeting, Judge, for at least

16   one of the Defendants, and in just informal conversations,

17   I've indicated that we have extended plea offers, and I was

18   working under the presumption that prior counsel had passed

19   those offers along.

20          As the Court is well aware, there's been mention a

21   number of times of a superseding indictment, and the

22   Government has -- has forgone seeking that indictment at the

23   request of the defense because of trying to resolve the issue

24   of lawful combatant immunity.  The theory was that depending

25   on how the Court might rule on those issues, there may or may

1   not be a need for the superseding indictment.  I think that

2   we're quickly at a point where that no longer matters.  So the

3   United States would anticipate seeking that superseding

4   indictment sometime in the near future.  Obviously, if the

5   lawful combatant immunity matter is resolved against the

6   United States, it wouldn't matter anyway.  If it's resolved in

7   favor of the United States, it would matter.  And the reason I

8   bring that to the Court's attention is because the Government

9   would seek to request of the District Court *Frye* hearings in

10  the matter, and we do that because if the Government were to

11  supersede, an additional count would be levied against each of

12  the Defendants.  The Government would not -- it would

13  substantially change the nature of the plea offers that would

14  be available and offered by the Government.  In other words,

15  the Defendants would be foreclosed from pleading then to what

16  they could plead to now, and the Government would seek that

17  *Frye* hearing before the superseding indictment to make clear

18  to the Defendants what's going on and why we have forestalled

19  seeking that indictment, Judge, and that's the status of where

20  we are with resolution negotiations.

21          THE COURT:  All right.  And I also want to make clear

22  that there are interpreters, Bosnian interpreters, in the

23  courtroom to provide services to any Defendant who needs them,

24  and I'm advised that none of the Defendants have felt a need

25  to use the services of the interpreters today.  Is that a fair

1 statement?

2          I think I see all defense counsel shaking their heads

3 yes.

4          All right.  I just want to be sure.  All right.

5 Thank you very much.

6          MR. DRAKE:  Thank you, Judge.

7          THE COURT:  All right.  Ms. Dragan, let me ask you;

8 in the progress of the disclosure of information, the defense

9 has submitted its copies of the discovery in foreign languages

10 to interpreters.  Is that a fair statement?

11          MS. DRAGAN:  We have submitted parts of the discovery

12 to interpreters.  We haven't submitted everything.  So we've

13 made some choices about what we wanted interpreted first and

14 submitted that.

15          THE COURT:  All right.  And are you satisfied with

16 the extent of that process on behalf of your client?

17          MS. DRAGAN:  It was extremely slow, and I was not the

18 person directly in charge.  Maybe may I have a moment?

19          THE COURT:  All right.

20          MS. DRAGAN:  Is there anything still pending?

21          We don't have anything still pending to come back

22 from them, but we haven't submitted anything for a while.  It

23 was taking months and months and months to do like 30 pages.

24          THE COURT:  All right.  And -- but you have -- you

25 have received translations of discovery that's important to

8

1    your client?

2           MS. DRAGAN:  Yes.  And the Government, as they said,

3    have provided their translations also of certain documents.

4           THE COURT:  Right.  And you've turned over to your

5    client, basically, every communication you've read or you've

6    received with respect to plea offers from the Government; is

7    that correct?

8           MS. DRAGAN:  Yes, Your Honor.

9           THE COURT:  Okay.  All right.  Thank you very much.

10          Ms. Freter.

11          INTERPRETER KOVACEVIC:  May we approach, Your Honor?

12          THE COURT:  Just one second.  Do you want to step up?

13          INTERPRETER KOVACEVIC:  We would like just to know if

14   you are --

15          THE COURT:  You need to step to the podium there, and

16   you can just -- your name is what?

17          INTERPRETER KOVACEVIC:  Tanja Kovacevic.

18          THE COURT:  And you're one of the two interpreters?

19          INTERPRETER KOVACEVIC:  Yes, interpreters.  We are

20   wondering if you are going to need us or dismiss us.

21          THE COURT:  Yes, I want you to stay until these

22   proceedings are concluded.

23          INTERPRETER KOVACEVIC:  Okay.

24          THE COURT:  And your name is what, ma'am?

25          INTERPRETER ZOLLER-COCIC:  Deanna Zoller.

1          THE COURT:  All right.  And so I don't want you to

2    leave.

3          INTERPRETER KOVACEVIC:  Okay.

4          INTERPRETER ZOLLER-COCIC:  Okay.

5          THE COURT:  All right.  Thank you very much.

6          All right.  Ms. Freter, let me ask you; what about

7    the translation of information?  You know, I take it you have

8    received pretrial discovery of, you know, information.

9          MS. FRETER:  And so, Judge, all of the pretrial

10   discovery was done when Mr. D'Agrosa still had the case, and

11   so by the time I was entered on the case, that whole process

12   had gone on for some period of time.  I have reviewed large

13   quantities of what he has given me.  In my communications with

14   my client, I'm not under the impression, other than what the

15   Government is going to disclose today, that we're seeking

16   anything additional.

17         THE COURT:  All right.  And the information you have

18   received that needed translation has been translated; is that

19   true?

20         MS. FRETER:  I would say to the best of my knowledge.

21   I think because I came in so late I don't know.  I can't sit

22   here and tell you everything that needs to be translated is

23   translated.  I can tell you that I'm not currently seeking

24   today any additional translations right now.

25         THE COURT:  Okay.  All right.

1          MS. FRETER:  Thank you.

2          THE COURT:  And you have turned over or you believe

3    that your client has received all of the offers from the

4    Government with respect to a plea agreement; is that right?

5          MS. FRETER:  That's my understanding, yes.

6          THE COURT:  Okay.  Thank you very much.

7          Ms. Trog.

8          MS. TROG:  Good afternoon.

9          THE COURT:  Good afternoon.  And you've been sort of

10   the person fronting for the defense counsel at the Court's

11   request earlier on.  Is that a fair statement?

12         MS. TROG:  Yes, sir, with the -- excuse me -- with

13   the assistance of the Public Defender's Office who have been

14   very, very helpful, Your Honor.

15         THE COURT:  All right.  Let me ask you; with respect

16   to your client, you've received the Government's pretrial

17   discovery of information disclosure, and I take it you would

18   say yes; is that right?

19         MS. TROG:  Yes, that is correct.  And the Public

20   Defender's Office was kind of enough to share all of their

21   translations with us, which are important because so much is

22   between our two clients.  So I believe that we -- we have had

23   an opportunity to review everything that's been out there to

24   date, sir.

25             THE COURT:  All right.  And you have disclosed to

1   your client every communication that the Government has made

2   with respect to a plea offer; is that right?

3           MS. TROG:  Yes, Your Honor.

4           THE COURT:  All right.  Thank you very much.

5           MS. TROG:  Okay.  Thank you.

6           THE COURT:  Ms. Miller.  Good afternoon.

7           MS. MILLER:  Good afternoon.

8           THE COURT:  You've received pretrial disclosure of

9   information from the Government; is that correct?

10          MS. MILLER:  Yes, Your Honor.

11          THE COURT:  Okay.  And you have -- or have you -- are

12  you satisfied with the extent of translation of -- on behalf

13  of the Defendant of the information that you've received?

14          MS. MILLER:  Yes, Your Honor.  I don't need anything

15  else translated.

16          THE COURT:  All right.  And you've disclosed to your

17  client all of the offers or offer that the Government has made

18  with respect to plea agreements; is that right?

19          MS. MILLER:  Yes, Your Honor.

20          THE COURT:  All right.  Thank you very much.

21          MS. MILLER:  Uh-huh.

22          THE COURT:  Mr. Swift.

23          MR. SWIFT:  Good afternoon, Your Honor.

24          THE COURT:  Good afternoon.  Do you have any

25  translations that are left or materials that need to be

1  translated?

2      MR. SWIFT:  I'm going to give you a yes and no answer

3  on this, Your Honor.  No, I didn't on December 23rd.  On

4  December 23rd, our center was hit by a ransomware attack,

5  which we've reported to the FBI.  An unfortunate event.  Our

6  IT and all support have indicated that no materials were

7  compromised to the outside world.  So it is all protected.

8  Unfortunately, it's encoded.  However, I refuse to negotiate

9  with such persons as I believe this is a criminal act, and so

10  we had to do it.  Now, Mr. Drake has been extraordinarily

11  helpful and will be giving us back -- you know, reissuing the

12  discovery and all of that.  At that time, I had identified no

13  translation parts.  In fact, we had the fewest conversations

14  we had independent, and we got them fairly early on, and I

15  don't believe that there are any, but I didn't check before

16  this hearing because we're still in the process of rebuilding.

17  So my answer on it is and if there was something, it would be

18  very small.  We -- again, we had the fewest conversations, and

19  we've been -- the Public Defender has been very helpful in

20  providing other materials.

21      THE COURT:  Okay.  And you have turned over to your

22  client every communication from the Government that --

23      MR. SWIFT:  My client and I have discussed potential

24  plea offers from the Government on every occasion that the

25  Government's made it, and we've discussed them in depth.  As

1  Mr. Drake alluded to, an awful lot of it has been pending the

2  combatant immunity issue.

3        THE COURT:  Okay.  Thank you very much.

4        Let me ask Ms. Trog.  With respect to preparation for

5  filing pretrial motions in this case, I did issue an order

6  giving all of the parties on both sides until April 1st to

7  file pretrial motions, and what is your response?  I haven't

8  gotten any objection to that or to the schedule that I filed.

9        MS. TROG:  Well, we would like to see the results of

10  the current motion before the Court on combatant immunity, and

11  we would -- also are still awaiting the last discovery by the

12  Government.  We don't know if it's going to require FISA/CIPA

13  motions.  We just need to see exactly what the last tranche is

14  of the discovery.

15        THE COURT:  Okay.

16        MS. TROG:  But we did talk among counsel before this

17  hearing, Your Honor, and everyone is aware that you had set

18  forth in your order of mid December, late December, sir, of

19  the April 1st date as well as setting aside the weeks of

20  August the 19th and 26th for the evidentiary hearings.

21        THE COURT:  Right.  Right.  Do you have a response to

22  what Ms. Trog said, Mr. Drake?

23        MR. DRAKE:  Yes, Your Honor.  Thank you.

24        THE COURT:  Okay.

25        MR. DRAKE:  Judge, I also looked at the Court's

1  order, and the Government has disclosed all arguably

2  suppressible evidence that would be subject to suppression or

3  other pretrial motions, at least in our opinion.  The

4  remaining discovery are miscellaneous matters that just in an

5  abundance of caution we are turning over.

6           The only thing that I would bring to the Court's

7  attention is that we've discussed matters like traditional

8  Fourth Amendment suppression issues and other types of

9  suppression issues.  By the deadlines set here, the Government

10 could respond to the traditional motions for suppression,

11 whether that be a suppression of evidence, a search warrant, a

12 statement, those types of things.

13          Should the defense move to suppress the surveillance

14 that was conducted under the FISA Act that we've given notice

15 of, that response from the Government takes a bit longer to

16 respond to because we have to go to, essentially,

17 cabinet-level positions to get virtual signatures from

18 cabinet-level members and then request that the Court review

19 in camera all of those materials.  I think that in the Court's

20 lengthy deadline for when those hearings could take place, we

21 can meet that.  I just don't know that our response on those

22 types of issues would be met by the Court's earlier deadline.

23          And the last thing that I would direct the Court's

24 attention to is, at the inception of this case, the Government

25 filed a notice under Section 2 of the Classified Information

1    Procedures Act.  At the conclusion of all of these motions,

2    the Government would make its motion, as we alerted the Court

3    to, under Section 2 of CIPA that we would request the Court

4    conduct a CIPA hearing, and we would follow the procedures

5    outlined in that act.  That's not addressed in this, but I

6    think we can still get that done, I believe, within the

7    guidelines that are set here before any trial, Judge.

8        THE COURT:  All right.  To your perception, there is

9    a substantial amount of material that the defense may be

10   filing motions with respect to that would not be covered by

11   the FISA or the security issues that you may seek to invoke?

12       MR. DRAKE:  If I understand your question, I do

13   understand that there is a significant amount of pretrial

14   motions that they will be filing in order to attempt to

15   suppress collection of the Government's evidence, yes, and we

16   would be prepared to respond to those.

17       THE COURT:  All right.  Okay.  What I'm planning on

18   doing also is to amend the order that I -- the scheduling

19   order that I had issued and require that -- with respect to

20   the evidentiary hearing -- that before July 1, 2019, I want

21   all of counsel for all the parties, the Government and

22   defense, to confer and to come up with a proposed schedule of

23   issues for presentation at the evidentiary hearing, whether

24   it's by item of evidence or by witness, but to put it together

25   so that, number one, everybody knows what's coming up and

1    everyone is prepared for their own case in that respect.   So I

2    will be doing that.

3              MR. DRAKE:  Yes, sir, Your Honor.

4              THE COURT:  All right.   Thank you very much.

5              MR. DRAKE:  Thank you.

6              MR. SWIFT:  Your Honor, if I might --

7              THE COURT:  Yes, sir.

8              MR. SWIFT:  -- I have one potential issue on the part

9    of the scheduling order.   We're talking in the hypothetical

10   about a superseding indictment, and of course, I haven't seen

11   the language yet on the superseding indictment.   So there

12   might -- you know, depending on when that superseding

13   indictment came down, you know, to challenge that indictment

14   or any part of the indictment, and, you know, you know, to the

15   extent that it renews old ground, one simply renews the

16   motion, but to the extent that it opens up a new field, then

17   we might need a little more time on the superseding.   I agree

18   that the evidence -- I don't think the evidence is going to be

19   at all different, but I think that there would -- I can

20   anticipate some challenges inside the part on it and,

21   particularly, depending on language, the need for a bill of

22   particulars on the next one.

23             THE COURT:  Right.   Well, okay.   And I can understand

24   that.   I do not think that that should stand in the way of any

25   motion to suppress evidence.   The evidence, you know, how it

 1  was acquired -- you know, that --

 2          MR. SWIFT:  Is independent of the charges.  I just

 3  wanted to make that clear.

 4          THE COURT:  All right.  Thank you very much.

 5          All right.  Now, I haven't gotten any objection, at

 6  least that I have perceived that was filed, with respect to

 7  the deposition issue.  And are defense counsel prepared to

 8  discuss whether or not -- I had suggested federal government

 9  facilities, State Department facilities.

10          Mr. Swift, do you want to -- do you feel

11  comfortable --

12          MR. SWIFT:  Certainly.  Mr. Drake and I, along with

13  Ms. McDonald, had discussions pursuant to the Court's Order,

14  and it was anticipated, in my other experiences, whether the

15  defense part, that the Government, as we filed for the part,

16  is willing to help facilitate but not grant access to the

17  Embassy or to the Consulate, and that's pretty standard on the

18  witness -- on the type of witnesses that we're calling.  So we

19  have -- and I would ask to speak in generalities for what one

20  might call operational.  I have no reason to believe that

21  there's a threat, but behaving smartly prevents there from

22  being a threat, and I think the Government is in complete

23  agreement with these things, but we have secured an outside

24  potential location with all -- and this was filed with the

25  Court.  I would have liked to have done it a little sooner,

1    but we got it in today.  We've secured an outside location

2    that is workable to all of the parties.  It has, after doing

3    research on it, sufficient Internet-type capabilities.  We are

4    able to contract for additional security.  I think that's

5    important because when the Consulate personnel leave the

6    Consulate, they aren't in the same position to provide

7    security when they leave, especially in a country like Bosnia,

8    where they, you know, aren't allowed to be armed in part, I

9    think.  So we've arranged for security details for that.  And

10   then all of this, of course, comes at some cost, and even the

11   U.S. Consulate personnel, but the good news on all of it is it

12   can be done.  It can be done at a relatively low level of

13   expense.  It is certainly far cheaper than sending everyone

14   over there and certainly more convenient.

15          In the motion, we did suggest that Ms. McDonald be

16   present there, and, perhaps, it was a misunderstanding.  We

17   never thought that she would swear the personnel.  But long

18   experience in both civil and criminal matters on these things

19   is it really looks smooth until you get there, and then things

20   have to be ironed out.

21          The Government also has indicated that they would

22   have a couple of people present as well to make sure that

23   things go well, and that's part on it.  So that we would have

24   all of those persons there.  We would set up the links and all

25   of that and test it in advance, and then we would be ready to

1   go, and we suggested some days in our motion for that that

2   worked for everyone here.

3        Now, one of our -- what was not clear to us is

4   whether Your Honor would preside over it or whether

5   Judge Perry would preside over the deposition.  So it was kind

6   of tough to guess at people's schedules on the period of time

7   for this.

8        THE COURT:  Right.  I am planning on presiding over

9   it, and I would just tell you to avoid February 21 to 25.

10        MR. SWIFT:  And we have done that.

11        THE COURT:  Okay.

12        MR. SWIFT:  So we have some suggested dates that are

13   all possible on it.  Our suggestion -- my practical

14   suggestion -- not in the motion -- is to the extent that we

15   start early is always better because if we have a technical

16   glitch we're not at the end of the time.

17        THE COURT:  Right.

18        MR. SWIFT:  We're able to do it immediately on it.

19        The other suggestion that I had on it -- and this

20   came from experience in a deposition I recently did in

21   Pakistan.  We started with all the wonderful tech, and then

22   there was a bit of an Internet brownout, and so what we did

23   was have a video camera still present to interview the witness

24   and just stayed up on a telephone line.

25        THE COURT:  Okay.

1          MR. SWIFT:  You couldn't see the witness as they

2    were, but we could hear it, and I think that that would be

3    sufficient, not ideal, but sufficient --

4          THE COURT:  Right.

5          MR. SWIFT:  -- rather than -- so we're planning on

6    videotaping it as well unless we're instructed not to.

7          THE COURT:  No.  I think whatever backup and

8    redundant process you have -- you know, you can never have too

9    many redundancies when you're dealing with digital, you know,

10   processes.

11         MR. SWIFT:  Absolutely.  That's our part on it.  The

12   reason I bring that up is that, generally, you're not

13   permitted to videotape court, you know, the proceedings, you

14   know, without the Court's authorized permission.

15         THE COURT:  Well --

16         MR. SWIFT:  And that was not in our motion, but it

17   was something we thought of afterwards that we hadn't asked.

18         THE COURT:  All right.  I do -- and the record will

19   reflect that I do approve that procedure.

20         Mr. Drake.

21         MR. DRAKE:  All right.  Thank you, Judge.

22         Mr. Swift is correct.  We've -- the Government -- we

23   have been in extensive conversations with he and Ms. McDonald

24   about how these depositions should proceed and what's

25   necessary.

21

1          Just so the Court's aware -- and Mr. Swift alluded to

2     it -- there is a filing that has some pretty concrete

3     suggestions to the Court or advises the Court of what the

4     parties' plans are.  With the Court's permission, after

5     reviewing that, what the Government would be required to do is

6     as follows:  Agents were over there before the holidays for

7     about three weeks and coordinated with the Department of

8     State, the Office of the Consular, the legal attaché office in

9     Sarajevo, and a host of other Bosnian authorities.  Our

10    understanding is that all of what Mr. Swift said is doable.

11    The Consular needs some specific answers to some specific

12    questions that they have sent to the Government, and if the

13    Court approves the plan that is submitted by Mr. Swift's

14    office, we could answer those questions and move forward.

15    With that in mind, the Consular's Office will put together a

16    plan, hopefully, that is largely in accord with what we've

17    agreed to.  They will send the U.S. Government a cost for

18    those services, and we will pay them at some point in time as

19    well as the additional costs that the Court has ordered.

20          Mr. Swift is right; there is -- things change -- my

21    understanding -- in Bosnia very regularly.  So we're trying to

22    be flexible because if we select a location that is not the

23    Embassy, such as a hotel -- and I think that's what we have to

24    do -- dignitaries or other officials could come, in which case

25    the Consular's Office will put us on the back burner and walk

1/28/2019 Status Conference

22

1    away from the proceedings, and we don't want that to happen.

2    So to the extent that we can have some flexibility, we will do

3    so, and I think that it can be accomplished on the dates and

4    times and locations that we've agreed to.

5              THE COURT:  All right.

6              MR. DRAKE:  And the Government has now started the

7    process of securing an ability to reimburse for those costs

8    that are associated with it.

9              THE COURT:  All right.  All right.  So it's not going

10   to be -- how many government personnel are intending to be

11   present?

12             MR. DRAKE:  Two.  Well, it depends on what you mean

13   by "government," Judge.  From the St. Louis area, two.  Then

14   there would be a member of the Consular's Office who would

15   address the Court's needs, such as swearing in the

16   individuals.  There would be an interpreter potentially

17   present at the scene as well as a stenographer and other

18   security officers as deemed necessary by the Embassy and the

19   regional security office and other officials that are on the

20   ground.  They will endeavor to make it work for all of the

21   parties that are involved.

22             I would note, Judge, that while we've selected some

23   dates, there is a seven-hour time difference between Bosnia

24   and here.  So we have to take that into account as well.

25             THE COURT:  Surely.  I'm willing to conduct that

1/28/2019 Status Conference

23

1    proceeding, you know, at any time during the 24 hours in

2    St. Louis, you know, open court in the middle of the night or

3    whatever to facilitate the scheduling on-site.

4              MR. DRAKE:  Yes, Your Honor.

5              MR. SWIFT:  Yes, Your Honor.  With the seven-hour

6    delay, I actually think it will work best if we start really

7    early.  The principal part, on our part on it, is the Consular

8    officers.  That's always been my long pole in the tent because

9    there is a very limited number of people who can swear someone

10   inside the Consulate that we get, and their presence is

11   necessary only to swear the person, and if we can -- and what

12   I would suggest is that provided both our witnesses are there

13   that they both be sworn at the same time so that the Consular

14   officer can go home.

15             THE COURT:  Right.

16             MR. SWIFT:  And then they may be able to go farther

17   into the afternoon or evening after that.  We made that work

18   in Pakistan on a couple of occasions.

19             THE COURT:  All right.  All right.  I'll ask you to

20   put all of that into a protocol that both sides agree.  So

21   we're back to two witnesses.  I thought one witness.

22             MR. SWIFT:  Well, we expect to have the other witness

23   as well.

24             THE COURT:  Oh, all right.

25             MR. SWIFT:  We just cannot get -- there are places in

24

1   Bosnia -- he had indicated his willingness in all of this --

2   that we can't make a phone call to.  The last time when

3   interviewed we didn't get a phone call.  The investigator

4   drove and went to the mountains and found him and all that

5   sort of stuff.  We expect to conduct that same part on -- in

6   the process, and the investigator will get there a little

7   early.  We will very specifically reveal all things.  You

8   know, we'd pay for his costs to get there, inside the part,

9   but apart from that, we wouldn't -- you know, we would reveal

10  all of those things necessary, but generally, we're going to

11  have to furnish transportation if he's still willing to come,

12  and we would be absolutely disclosing exactly what this is,

13  and our understanding from the Bosnian government is that it

14  must be completely voluntary.  In other words, he has to be

15  told that it's voluntary, that he doesn't have to come, and

16  that he's under no legal obligation to come, and that he would

17  be subject to U.S. laws potentially were he to give false

18  testimony, and that after that, the -- we have clearance to

19  go, but all of those things will be delivered to him.

20          Now, as we said in our last report, we can't do

21  that -- it didn't seem worth it once we had for sure one

22  witness coming to spend significant resources to go try and

23  find him in the middle of the winter without part because

24  we'll do one and potentially two.  My estimation -- I haven't

25  looked at the 302s or not -- it's about four hours with

25

1   translation time.  Would you agree?

2            MR. DRAKE:  Yeah, I think so, Judge.  Yeah, I think

3   that's fair.

4            MR. SWIFT:  I think about four hours per witness.

5            THE COURT:  All right.  That was going to be my next

6   question.

7            MR. SWIFT:  Yeah.

8            THE COURT:  Okay.  All right.  Thank you both very

9   much.

10           MR. DRAKE:  Thank you, Your Honor.

11           THE COURT:  All right.  I'm just about to close my

12  portion of the proceedings this afternoon.  Does anyone on

13  behalf of the Government need to make any further record about

14  anything that we've talked about?

15           MR. DRAKE:  No, sir, Your Honor.  Thank you.  I

16  believe we're okay.

17           THE COURT:  All right.  Anyone from the defense?

18           MR. SWIFT:  No, sir, Your Honor.  Thank you.

19           THE COURT:  All right.  There will be just a brief

20  recess, and then Judge Perry will preside.  Thank you very

21  much.

22       (Proceedings concluded at 2:41 p.m.)

23

24

25

<u>CERTIFICATE</u>

I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 25 inclusive.

Dated at St. Louis, Missouri, this 17th day of March, 2019.

*/s/ Gayle D. Madden*

_____

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter