**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
| Plaintiff, | ) No. 4:15-cr-00049 CDP/DDN |  |
| v. | ) |  |
| ARMIN HARCEVIC, | ) |  |
| Defendant. | ) |  |

**DEFENDANT HARCEVIC'S**
**SENTENCING MEMORANDUM**

*Charles D. Swift*
Pro Hac Attorney for Armin Harcevic
Constitutional Law Center for Muslims in America
833 East Arapaho Rd., Suite 102
Richardson, TX 75081
972-914-2507
cswift@clcma.org

*Catherine McDonald*
Pro Hac Attorney for Armin Harcevic
Constitutional Law Center for Muslims in America
833 East Arapaho Rd., Suite 102
Richardson, TX 75081
972-914-2507
cmcdonald@clcma.org

**TABLE OF CONTENTS**

**SENTENCING ANALYSIS**.................................................................................................. 1

**I. SENTENCING FACTORS UNDER 18 USC § 3553(a)** .................................................. 2

A. History and Characteristics of the Defendant ..................................................... 2

B. The Events Giving Rise to the Offense Conduct ................................................ 5

1) Background of Abdullah Ramo Pazara and the Bosnian Unit ........................... 6

2. The Terrorism Enhancement Should Not Apply ............................................... 10

3. The Terrorism Enhancement's criminal history category increase to level VI is arbitrary and unwarranted ............................................................................................... 12

**II. PURPOSES UNDER 18 USC § 3553(a)(2)** ................................................................. 15

A.   Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense .................................................................................. 15

B.   Deterrence and Protection of the Public........................................................ 16

C.   The Need for Care, Treatment or Training of Defendant is Not Implicated................. 17

**III. MR. HARCEVIC'S SENTENCING RECOMMENDATIONS AND REQUESTED FINDINGS** ............................................................................................................. 17

A.   Term of No More than Three Years is the Appropriate Sentence ................................. 17

B.   No Fine Should Be Imposed ......................................................................... 18

**IV. CONCLUSION**.......................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**U.S. Supreme Court Cases**

*Gall v. United States,* 552 U.S. 38 (2007) ...................................................................... 8

*Kimbrough v. United States*, 552 U.S. 85 (2007) ..................................................... 1, 13

*McMillan  v. Pennsylvania*, 477 U.S. 79 (1986)..................................................... 11, 12

*Rita v. United States*, 551 U.S. 338 (2007)..................................................................... 8

*United States v. Alhaggagi*, 2019 U.S. Dist. LEXIS 37889, 2019 WL 1102991 (N.D. Cal. March 8, 2019)....................................................................................................... 14

*United States v. Booker*, 543 U.S. 220 (2005) .......................................................... 1, 8

**Cases**

*Humanitarian Law Project et al v. Holder*, 130 S.Ct. 2705 (2010) ......................... 9, 10

*Nelson v. United States*, 129 S. Ct. 890 (2009)............................................................... 8

*United States v. Conley*, 14-CR-163 (D. Colo. 2014).................................................. 14

*United States v. Conley,* 14-CR-163, Final Judgment (Doc. 79).................................. 15

*United States v. Conley*, 14-CR-163, Plea Agreement (Doc. 37) (D. Colo. Sept. 10, 2014)........ 14

*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).................................................... 8

*United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011) .......................................... 11

*United States v. Khan,* 1:14 –CR -564 (N.D. Ill 2016)................................................. 13

United States v. Lake, 419 F.3d 111 (2d Cir. 2005) ........................................................ 8

*United States v. Mehanna, Transcript of Disposition*, No. 09-10017-GAO (D. Mass. 2012)...... 12

*United States v. Menyweather*, 431 F.3d 692 (9th Cir. 2005); ...................................... 8

*United States v. Reyes-Santiago*, 804 F.3d 453 (1st Cir. 2015)................................... 13

**Statutes**

(18 U.S.C. § 3553(a) ...................................................................................................... 12

18 U.S.C. § 371 .............................................................................................................. 14

18 USC § 2339................................................................................................................. 9

18 USC § 2339A ......................................................................................................... 1, 8

18 USC § 3553 ....................................................................... 1, 2, 8, 9, 13, 15, 17

18 USC §2339B ...................................................................................................... 8, 9, 14

U.S.S.G. § 4A1.1 ........................................................................................................... 12

**Articles**

James P. McLoughlin Jr., Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations, 28 Law & Ineq. 51 (2010). ........................................................................................ 10

Punishing Terrorists: Congress, The Sentencing Commission, The Guidelines, And The Courts, 23 Cornell J.L. & Pub. Pol'y 517 (2014). (Attached as Exhibits Y and Z respectively)... 10, 11

Defendant Armin Harcevic ("Mr. Harcevic") through counsel, respectfully submits this Sentencing Memorandum in connection with his sentencing by the Court on June 7th, 2019.  On February 25, 2019, Mr. Harcevic pled guilty before this Honorable Court to one count of Conspiracy to Provide Material Support to Terrorists, in violation of 18 USC § 2339A and one count of Providing Material Support to Terrorists in violation of 18 USC § 2339A. Mr. Harcevic accepts full responsibility for his actions, and through this memorandum seeks to provide the Court with information pertinent to his sentencing in the interests of justice under 18 USC § 3553.

## SENTENCING ANALYSIS

In accordance with *United States v. Booker*, 543 U.S. 220 (2005), the Court is directed to impose a sentence in accordance with 18 U.S.C. § 3553(a). In so doing, the Court is to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in 18 USC § 3553(a)(2).  *Id.* (emphasis added); *see, e.g., Kimbrough v. United States*, 552 U.S. 85, 111 (2007) ("sufficient, but not greater than necessary" requirement is the "overarching instruction" of § 3553(a)).  Those purposes include "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 USC § 3553(a)(2)(A); "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B); "to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C); and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2)(D).  In determining a sentence "sufficient, but not greater than necessary" to accomplish these purposes, courts must consider a number of factors, including (as relevant here) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); the guidelines sentencing

range and any applicable Sentencing Commission policy statements, *id.* § 3553(a)(4), (5); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id*. at § 3553(a)(6).

Based on the above criteria the defendant respectfully submits for the reasons set forth below that a sentence of no more than three years of confinement is sufficient, but not greater than necessary in this case.

## I. SENTENCING FACTORS UNDER 18 USC § 3553(a)

### A. History and Characteristics of the Defendant

The Presentence Report ("PSR") provides a broad overview of Mr. Harcevic's personal life history from his childhood in Bosnia to his immigration to the United States. Mr. Harcevic's experiences in childhood during the war and ethnic cleansing in Bosnia, fleeing as a refugee, his family and community have had a significant impact in shaping the compassionate, charitable and empathetic man he is today. When the Bosnian War broke out he witnessed many atrocities including his father being taken to a concentration camp. He went without basic utilities, food, clean water and lived in fear with his younger sister. Many of his extended family members were murdered and/or raped. Once they managed to flee Bosnia with a convoy, their convoy was intercepted by Croatian soldiers that advised they would likely be massacred if they continued onward. Finally, Mr. Harcevic and his family made it as refugees to Germany and eight years later, to the United States. To this day it is very difficult for Mr. Harcevic to reflect on the horrors visited upon the Bosnian people during his childhood. Mr. Harcevic fled those circumstances and felt lucky to have escaped when so many had suffered greatly and lost everything. Mr. Harcevic knows all too well the trauma, fear, death and destruction suffered by

civilians during war. Those experiences made him uniquely qualified and inclined to empathize with the horrors enacted on the Syrian people by Bashar Al-Assad in 2013 and 2014.

Attached to this Sentencing Memorandum is documentation from 2010-2014 of the numerous donations Mr. Harcevic made to various organizations for various charitable causes during the same time he made his donation for Mr. Pazara's unit that was fighting Bashar Al-Assad (Exhibits A-E). These only cover his tax-deductible donations. However Mr. Harcevic regularly donated to anyone who needed help. Also attached to this Sentencing Memorandum are letters from close friends and family who have all benefited greatly from Mr. Harcevic's generosity, warmth, strong sense of duty and compassion (Exhibit F). These letters speak of a "gentle giant" who gave money to anyone that asked. A man that was not wealthy, but worked very hard in construction and as a handyman, often for free if it was to help a friend (Exhibit F.18, F.12, F.8, F.21). A man who worked hard to support not only his family of five, but has financially supported his mother and her charity work in Bosnia his entire life (Exhibit F.3). Many of these letters emphasize the generous and dependable spirit of Mr. Harcevic's character, a pillar of the community who was often the first to kick off fundraising events with his own contribution (Exhibit F.8, F.19, F.21, F.6, F.13). A man who worked hard in construction from the age of 17 to support his grandfather, mother and younger sister as she went to college (Exhibit F.3, F.5, F.1). He has maintained close and sustained relationships with good families, becoming a role model and motivator for young men to study hard and improve their relationships with their own families (Exhibit F.11, F.9). The man whose children love him and, cling to him wherever they go, who takes them to Chuck-E-Cheese and for picnics regularly (Exhibit F.9, F.19, F.5, F.12). Mr. Harcevic is the man the community had so much faith in that non-relatives banded together to post their homes and hundreds of thousands of dollars of their

own money for his bail, because they trusted him and were horrified that his giving spirit could

land him in the position he finds himself in today (Exhibit F.7, F.8).

Mr. Harcevic's mother and father have both written letters describing his experience as a

child and teenager in Bosnia during the war. They implore the court to understand that Mr.

Harcevic would never have been able to turn down a request for help from anyone, but especially

a request he believed would help protect the Syrian people (Exhibits F.1, F.3, F.14). The world

was watching Syria burn in 2013 and everyone was trying to help in whatever ways they could.

But Mr. Harcevic was not only focused on Syria, he was donating regularly during this time to

many relief and community efforts. In August of 2013, he donated $2,000 to his local Muslim

Community Association fundraising efforts (Exhibit B). In 2010, he donated $5,000 to help the

flood victims in Pakistan, a massive humanitarian issue at the time, and $1,100 for relief projects

around the world (Exhibit B, C). In 2011 and 2012, he donated over $2,000 to Islamic Relief for

global relief efforts (Exhibit D,E). Throughout 2014, he donated over $600 to the Helping Hand

USA organization (Exhibit A). He helped build the Islamic Community of Bay Area Bosniaks,

contributing $9,000 of his hard-earned money; their Board of Directors wrote on his behalf as

well (Exhibit F.6).

These are only a glimpse of Mr. Harcevic's consistent and persistent charitable efforts,

and these are only the ones that were tax-deductible. They show a man who gave thousands upon

thousands more to global relief efforts and his local community than the $1,500 he donated to

help Mr. Pazara buy basic equipment for people he believed were legitimately fighting Bashar

Al-Assad and helping the Syrian people. Unsurprisingly, Mr. Harcevic has remained a

productive member of society while on probation, and has worked hard while building a strong

relationship with his contracting employer to continue providing for his family. (Exhibit F.22).[1]

 B. The Events Giving Rise to the Offense Conduct

      During the unfolding of the Syrian Civil War, Mr. Harcevic watched the death and

destruction that was unleashed on the Syrian people. Being the charitable, compassionate and

empathetic man he is, he began to look for ways to help the refugees and support efforts to

counter Bashar Al-Assad. While he was donating to relief efforts he also became aware of

Bosnians that were so overcome with the plight of the Syrian people that they decided to travel

to Syria to help, and to fight the now internationally condemned and illegitimate, Bashar Al-

Assad. Pazara and Jasaveric had joined the Free Syria Army ("FSA"), a set of rebel forces

fighting Bashar Al-Assad. Mr. Harcevic explained his understanding of Pazara's membership in

the FSA at his Change of Plea hearing, this is crucial as the FSA has never been a designated

foreign terrorist organization ("FTO"). (Change of Plea Hearing Transcript, p.15-18). While the

Presentence Investigation Report ("PSR") goes into great detail to provide background for the

evolution of various FTO's, including Al-Qaida, Al-Qaida in Iraq, Al-Nusrah Front and ISIS, it

is also careful not to mention any of these FTO's as groups that any of the defendant's in the

case were part of until much later, after Mr. Harcevic's contribution.

      During the bloody and confusing Syrian Civil War, there were many smaller units all

over the country fighting under various groups. Many of these groups changed over time and as

ISIS became a growing influence in the region it was difficult to tell who was who. The PSR

carefully describes Pazara and the Bosnian Unit as, "fighting in Syria", "committing acts of

---

[1] These instances are only a small sample of Mr. Harcevic's character reference letters. The remainder of the 19 letters are included with this Memorandum to show that these positive sentiments are not just echoed but uniquely shared by the broader community and universally reflect the high esteem in which he is held by everyone from his parents and employers to a Vietnam veteran and friends (Exhibit F).

violence in Syria and Iraq", "insurgents in Syria" and other similar terms. PSR, para . 19, 22, 24, 25. In fact, until May 20, 2014, there is no direct assertion that Pazara or any of the others were fighting for ISIS. It is very clear they were fighting Assad's forces in Syria and that is what the defendant stated in his plea, that he understood they were part of the FSA. Mr. Harcevic provided his monetary support to Defendant Hodzic on September, 24, 2013. This was over eight months before Pazara claimed any new connection to ISIS on his Facebook page. These facts are critical for their impact on the assessment of whether a terrorism enhancement is properly applied in this case. They are also critical to the weight which should be accorded the terrorism enhancement by this court should the court find that the terrorism enhancement applies despite the fact that the government conduct at issue was that of the Assad regime.

1) Background of Abdullah Ramo Pazara and the Bosnian Unit

Pazara left the United States on May 28, 2013 and arrived at the border of Turkey and Syria in July 2013. When Pazara arrived in Turkey, he had no plan to join a specific group, but he knew that he wanted to fight against the Assad regime. At the border, Pazara met another individual, Jasmin Jasaveric, who was a fellow Bosnian. They were instructed by a group called Nour al-Din al-Zenki, which was under the command of the FSA. While they received instructions from the FSA, civilians drove them in to Syria. Pazara fought directly with the FSA for the first two or three weeks. Most of the time he was stationed just to the east of Aleppo. The FSA provided Pazara and Jasaveric with clothing, food, and accommodation in houses in the city. Their duties included securing the hospital and helping the injured, no matter who they were. They would also work in the kitchens and distribute food.

After the first few weeks fighting with the FSA, Jasaveric and Pazara were placed under the command of Jaish al-Mujajireen wal-Ansar ("JMA"). Their leader in JMA was Salahuddin al-Shishani. JMA was part of a broad coalition united in fighting against the Assad regime. Most

of the Bosnians in the unit expressed continued allegiance to the FSA. Both the FSA and JMA engaged in hostile activities principally against the forces of Bashar al-Assad. Both the FSA and JMA were under a chain of command with a person responsible for subordinates. Both the FSA and JMA wore military attire, akin to uniforms, and were recognizable at a distance as combatants. Both the FSA and JMA carried arms openly. Both the FSA and JMA generally complied with the laws of war and attacked Assad military targets. Further, neither the FSA nor JMA was at war with the United States, and neither the FSA nor JMA was designated as an FTO when Mr. Harcevic sent his contribution to Pazara.

Mr. Harcevic, the charitable Bosnian refugee, was asked by someone who went to Syria to help fight Bashar Al-Assad's forces for money to help them buy boots, uniforms and other similar equipment. He donated that money right away, as the request came on a payday and he felt it was a sign for him to help. He donated much more money to many other worthy causes during this time, and his mistake has caused him and his wonderful family significant pain, instability, financial hardship and now a future apart.

C. Guidelines Sentencing Range

In this case, the PSR has noted a Guidelines range of 360 months.[2] This is unreasonable considering the relevant conduct and would be outside even the most extreme sentences if it approached anywhere near this range. In fact, this case is a text book example of why *United States v. Booker,* 543 U.S. 220, 259-60 (2005) and its progeny hold that the Guidelines are merely one factor for the Court to consider at sentencing, along with the other factors

---

[2] The defendant has separately objected to the Guidelines calculation in its Objections to the PSR (Doc.546). Without addressing the core basis for the defense objections (combat against the Assad regime does not meet the statutory requirements to apply the terrorism enhancement), Probation continues to assert that the terrorism enhancement is appropriate in calculating the Guidelines in this range. The defendant maintains his objections set out in Doc. 546.

enumerated in § 3553(a).  This discretion to vary from the guidelines is important in order to impose a just sentence in accordance with 18 USC §3553(a). Indeed, as the Supreme Court emphasized in *Nelson v. United States*, 129 S. Ct. 890 (2009), "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable."  129 S. Ct. at 892.[3]

Accordingly, while the court must still consider the Guidelines, see 18 USC § 3553(a)(4), nothing in the statute provides any reason to treat that calculation as more controlling of the final sentencing decision than any of the other factors a court must consider under § 3553(a) as a whole.  See *United States v. Menyweather*, 431 F.3d 692, 701 (9th Cir. 2005); United States v. Lake, 419 F.3d 111, 114 (2d Cir. 2005), explaining *United States v. Crosby*, 397 F.3d 103, 11113 (2d Cir. 2005).   In addition to lacking any presumption of reasonableness, the advisory Guidelines do not occupy any superior position among the factors listed in §3553(a) that a court must consider in imposing sentence.

Indeed, with respect to violations of 18 USC § 2339B and 2339A, the Guideline sentence provides the Court with little to no guidance. Relying on the Guideline sentence in all cases would result in a default sentence of the maximum statutory term of 360 months for any conduct determined to constitute material support of the terrorist organization regardless of the type of conduct. Under the Guideline sentence, an individual who provided money for boots, uniforms

---

[3] While the Supreme Court's ruling in *Rita v. United States*, 551 U.S. 338 (2007), established that a within Guidelines sentence can be presumptively reasonable, *Id*. at 347, that presumption is restricted to appellate review and "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id*. at 351 (citing *United States v. Booker*, 543 U.S. 220, 259-60 (2005)).  *See Nelson*, 129 S. Ct. 890, 892 (wherein the Court twice remanded the Fourth Circuit's decision(s) that affirmed a sentence even though the District Court had stated that while the Guidelines were not mandatory, they enjoyed a presumption of "reasonableness" and reiterated "district judges, in considering how the various statutory sentencing factors apply to an individual defendant 'may not presume that the Guidelines range is reasonable.'" 129 S. Ct. at 892, quoting *Gall v. United States,* 552 U.S. 38 (2007); *see also id*. ("[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable").

and basic equipment to a rebel group not designated as an FTO would receive the same punishment as a career criminal, who provided material support by teaching how to make a bomb. Accordingly, the Court must and should look to the other factors under § 3553(a) in order to form a just sentence.

While the ruling in *Humanitarian Law Project et al v. Holder*, 130 S.Ct. 2705; 177 L.Ed.2d 355 (2010) cast a wide net on the activities which would be in violation of the Federal statutes for providing material support of terrorism, it was decided in 2010, several years after the Federal Sentencing Guidelines had set out a presumptive range for the offenses under 18 U.S.C § 2339.  The Guidelines as written are a uniform punishment, and no distinction is set out between individuals of varying conduct to specially designated terrorist organizations.  The Guidelines have not caught up with the range and degrees of offenses which can now fall under 18 U.S.C. § 2339.

In addition to sending money, one reason given for the Guidelines range was the statements made by Mr. Harcevic in support of the fighters in Syria that were later associated with ISIS.  Mr. Harcevic made only responsive comments, like "Amen" and "may God bless you". His written support in addition to his monetary support was factored into the calculation of the Guidelines range.

Despite his stated support for the later ISIS Facebook postings, this should not, and cannot, be taken into account in fashioning a length of sentence for Mr. Harcevic. His statements were pure political speech, and not intended to promote or provide advice, or any sort of training or assistance of any kind.  It is clear in *Humanitarian Law* that verbal support of a terrorist organization or terrorist cause, not amounting to "expert advice or assistance" does not fall under the rubric of "material support" for the purposes of 18 USC § 2339B.  *Humanitarian Law,* 130

9

S.Ct. at 2723.  Congress has not, therefore, sought to suppress ideas or opinions in the form of

"pure political speech." Rather, Congress has prohibited "material support," which most often

does not take the form of speech at all.   "And when it does, the statute is carefully drawn to

cover only a narrow category of speech to, under the direction of, or in coordination with foreign

groups that the speaker knows to be terrorist organizations." *Humanitarian Law,* 130 S.Ct. at

2723.  This does not apply to Mr. Harcevic's conversations.  His political speech is not

prohibited.

2. The Terrorism Enhancement Should Not Apply

The terrorism enhancement has itself also been the subject of much scholarly debate and

courts have struggled with its application. *See* James P. McLoughlin Jr., Deconstructing United

States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support

for Foreign Terrorist Organizations, 28 Law & Ineq. 51 (2010) (available at:

http://scholarship.law.umn.edu/lawineq/vol28/iss1/2) . See also Punishing Terrorists: Congress,

The Sentencing Commission, The Guidelines, And The Courts, 23 Cornell J.L. & Pub. Pol'y 517

(2014). (Attached as Exhibits H and I respectively). In *McMillan  v. Pennsylvania*, 477 U.S. 79,

106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), the Supreme Court implied that sometimes a higher

standard of proof beyond the preponderance of the evidence may be warranted in cases where

the sentencing enhancement in question is "a tail which wags the dog of the substantive offense."

Id. at 88. As James McLoughlin noted in deconstructing this enhancement, the enhancement is

draconian and represents the classic "tail wagging the dog" perspective.  23 Cornell J.L. & Pub.

Pol'y at 535. The Due Process Clause of the Fifth Amendment and the Trial by Jury Clause of

the Sixth Amendment requires a reasonable doubt finding after the Booker and Blakely

decisions. This is especially true because this enhancement has become, in effect, mandatory in

material support convictions. It is essentially the norm in all of these prosecutions.  *United States*

*v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011).  This enhancement essentially creates a separate offense, an offense that requires a separate finding of intent – specifically that Mr. Harcevic's actions were "calculated" to influence the conduct of government.  This – of all enhancements – must be what the Supreme Court envisioned in *McMillan* when it talked about the "tail which wags the dog of the substantive offense."  Here, where the enhancement raises the range from 57-71 months up to 360 months, the government should have to prove to this Court at sentencing that the terrorism enhancement applies beyond a reasonable doubt.

Even if the Court does ultimately conclude that the conduct here is sufficient to fulfill the statutory obligations in order to apply the enhancement, the defense submits that in this case the Court should nevertheless find that it has no validity. After *Kimbrough*, this Court is free to openly disagree and give this enhancement little or no weight.  As noted by Professor John McLoughlin, there was not much empirical data on terrorism sentences when the Sentencing Commission promulgated it. 23 Cornell J.L. & Pub. Pol'y at 537. Professor McLoughlin's observations are particularly germane to this case. The draconian nature of the terrorism enhancement makes clear that the Sentencing Commission envisioned criminal conduct like Mr. Pazara's when they established the enhancement, rather than someone like Mr. Harcevic who was seeking to help the Syrian people and whose criminal conduct displayed none of the characteristics that one would associate with a person who is utterly unredeemable and warrants the highest possible sentence. The terrorism enhancement of twelve levels however fails to make any distinction between the types of conduct. For this reason it provides this Court little, if any, guidance.

<u>3. The Terrorism Enhancement's criminal history category increase to level VI is arbitrary and unwarranted</u>

The Sentencing Commission classifies defendants by Criminal History Category because courts must endeavor to impose a sentence that will "protect the public from further crimes of the defendant" (18 U.S.C. § 3553(a)), and "repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." U.S.S.G. § 4A1.1, Introductory Comment. The terrorism enhancement, however, unnecessarily increases the criminal history category. As set out in the defendant's objections to the PSR, Senior Judge George O'Toole, Jr., presiding over *United States v. Mehanna, Transcript of Disposition*, No. 09-10017-GAO (D. Mass. 2012) gave a strong criticism of the mandatory classification of a criminal history VI as, "too blunt an instrument to have any genuine analytical value" and "fundamentally at odds with the design of the Guidelines" because it "imputes a fiction into the calculus." *Id.* at 8-9. *See also United States v. Alhaggagi*, 2019 U.S. Dist. LEXIS 37889, 2019 WL 1102991 (N.D. Cal. March 8, 2019), Judge Charles R.  ("…the enhancement's treatment of criminal history-automatically assigning to all terrorism defendants a criminal history category of VI- is inappropriate based on the seriousness of the crime, inappropriate based on assumptions about recidivism, and inappropriate as to this Defendant, warranting a downward departure"). *Id.* at *16.

The circumstances in Mr. Harcevic's both criminal and personal history make clear it would be a miscarriage of justice to consider him as the equivalent of an armed career criminal utterly without redeemable value . His history makes clear that he is a productive member of society who sought to help people, was moved by the Syrian conflict, and sought to give aid to an individual he believed was there to help the Syrian people. This is not an irredeemable person.

<u>D. The Need to Avoid Unwarranted Sentence Disparities</u>

A sentence of three years does not result in an unwarranted sentence disparity, and in fact is reflective of the sentence given to a co-defendant in this case. Further, similar cases recently sentenced have been given similar or lesser sentences for material support charges.  In this case, co-defendant Ramic shared a lesser culpable role than Mr. Harcevic, amounting to very similar conduct. In fashioning an appropriate sentence, judges are directed by statute to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C.S. § 3553(a)(6).

Jasminka Ramic's conduct and cooperation, that the Court assessed warranted 36 months imprisonment followed by 3 years of probation, is considerably lower than the recommended Guidelines range and does not include a terrorism enhancement. There is no reason, no additional conduct or lack of cooperation that could justify the Court treating Mr. Harcevic any differently. In *United States v. Reyes-Santiago*, 804 F.3d 453, 456 (1st Cir. 2015), the court found sentencing disparities between equally high-level members of a conspiracy to distribute various drugs was substantively unreasonable under 18 U.S.C.S. § 3553(a)(6)  because the rationale for the substantial disparity between the defendant's sentence and sentences of defendants above him was not supported by the record. Here, there is nothing in the record to support a significant disparity from Jasminka Ramic's sentence even if she plead to a lesser charge as the conduct was similar and arose out of the same circumstances.

In *United States v. Khan,* 1:14 –CR -564 (N.D. Ill, 2016) Mr. Khan was convicted of attempting to provide material support to ISIS.  Khan attempted to travel overseas to fight for ISIS, and attempted to bring his two minor siblings with him, knowing it would likely mean their death. At the sentencing, Judge John J. Tharp, Jr. sentenced Mr. Khan to forty months' imprisonment in the BOP, with 20 years of supervised release.

13

According to the plea agreement, the government, despite contending that the terrorism enhancement applied, recommended a sixty-month sentence to the judge in this case. Also, Mr. Khan had actually met with an ISIS recruiter online. While the defendant did plea, and the government did indicate it would file a substantial assistance motion at the time of the plea, the difference in how these prosecutions unfolded remains striking.

In *United States v. Conley*, 14-CR-163 (D. Colo. 2014), Shannon Maureen Conley pleaded guilty to one count of conspiracy, in violation of 18 U.S.C. § 371, referencing 18 U.S.C. § 2339B, for having provided material support to Al-Qaeda and its affiliates, including ISIS. According to the plea agreement, Ms. Conley met her coconspirator, Yousr Mouelhi on the internet in 2014, and thereafter discussed their mutual beliefs and support for violent Jihad. After Mouelhi advised Conley that he was an active ISIS fighter in Syria, she agreed to travel to Syria to assist. Thereafter, on September 7, 2013, Conley joined the United States Army Explorers (USAE) in order to receive military training in tactics in firearms for the purpose of helping ISIS. On February 7-9, 2013, Conley traveled from Colorado to Texas to attend the USAE training. On March 29, 2014, Mouelhi purchased Conley an airplane ticket so that she could travel to Turkey. On April 8, 2014, Conley traveled to the Denver International Airport to fly to Turkey, but was apprehended before she could board the plan. *United States v. Conley*, 14-CR-163, Plea Agreement (Doc. 37), at 7-9 (D. Colo. Sept. 10, 2014).

When arrested, Conley was in possession of numerous items demonstrating proficiency and certifications of a number of specialized skills, including first aid/nursing certification, U.S.A.E. Certification, National Rifle Association certification and a first aid manual. *Id*. at 9. Agents also recovered DVDs of Anwar Al-Awlaki lectures, books about Al-Qaeda, its affiliates, and jihad, and shooting targets labeled with the number of rounds fired and distances. *Id.* Conley,

who was 19 at the time of the crime, pleaded guilty and agreed to provide assistance to the United States. Her initial adjusted offense level was 35, based on the application of the terrorism enhancement. The district court sentenced Conley to 60 months imprisonment. *United States v. Conley,* 14-CR-163, Final Judgment (Doc. 79), at 7.

In comparing Mr. Harcevic's donation to the above cases, it is clear that a sentence of more than three years would created and unwarranted disparity in the types of conduct being punished. In terms of relative culpability, Mr. Harcevic is most akin to his co-defendant, Jasminka Ramic.

## II. PURPOSES UNDER 18 USC § 3553(a)(2)

Under 18 U.S.C. § 3553, the Court is instructed that it "shall impose a sentence sufficient, but not greater than necessary."

### A. Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense

A three year sentence for Mr. Harcevic satisfies these overarching concerns. The mistaken and misplaced charitable donation of an immensely generous and compassionate man, with a strong personal and professional life, does not call for the severe life sentence that would result from 360 months in custody. A sentence greater than three years would be disproportionate to the offense conduct to which Mr. Harcevic pled, and would only result in further trauma and crisis for Mr. Harcevic and his family.

A three year sentence is proportional punishment for Mr. Harcevic's conduct. His crime has already carried significant consequences for him and his family. In addition to facing years in prison and being on probation for years, Mr. Harcevic's offense has had significant collateral consequences for him and his family. It has brought unwanted attention, severe stress for him and stress on his family as they face an uncertain future, financial difficulty and hostility. These

consequences permanently affect Mr. Harcevic's wife and children, parents, friends and community. He is a caring and giving man who has permanently altered his and his family's life. He will certainly be deported and likely be on a permanent "watch list", never being allowed to enter the United States again.

A just punishment should take into account the fact that the views he held that led to this offense were the result of his sensitivity to the plight of the Syrian people, due to his own harrowing experience as a refugee of the Bosnian war. A needlessly long sentence will be ruinous and counterproductive.

B. Deterrence and Protection of the Public

If released on the date of his sentencing, Mr. Harcevic will certainly be removed back to Bosnia. Mr. Harcevic presents no risk to commit future crimes or future acts of terror. Indeed he has learned a difficult lesson in needing to be more cautious about where he donates money. This is a lesson his whole community has now learned, after watching what ruin his misplaced generosity has brought to him and his family.

As for general deterrence, in a case such as this, centered on aberrant conduct, is not an appropriate vehicle for its advancement and, it is respectfully submitted, ought not to be looked to as such. Even if it was, the proposed sentence of three years complies with the goals of general deterrence, showing that even such an aberrant violation of the law by an otherwise law-abiding and productive citizen results in serious, damaging, and irreparable consequences.

The public protection implicated in this case because of Mr. Harcevic's mandatory removal from the United States is that of the Bosnian public. The defense respectfully submits that the level of protection warranted to the Bosnian public is demonstrated by the treatment of those members of the Bosnian Unit which fought in Syria and later received sentences between 1 and 2 years for

their conduct. [4] From a public protection standpoint it makes no sense to sentence Mr. Harcevic to a significantly longer period of time to protect the public from the risk of future crimes.

### C.   The Need for Care, Treatment or Training of Defendant is Not Implicated

This concern is not implicated in Mr. Harcevic's case, as he has no condition requiring treatment or specialized care, and additional confinement will not result in greater professional and vocational credentials and experience that might reduce his risk of recidivism.

## III. MR. HARCEVIC'S SENTENCING RECOMMENDATIONS AND REQUESTED FINDINGS

### A.   Term of No More than Three Years is the Appropriate Sentence

As outlined above, Mr. Harcevic's offense conduct warrants a sentence in the lower range of sentencing for providing material support of terrorism charges. More than three years would put Mr. Harcevic's sentence in the upper half of the lower range and that is not warranted in this case. The defense suggests that a term of three years is the average of the lower level convictions and that is what this Court gave to Mr. Harcevic's co-defendant, Jasminka Ramic.

The defense respectfully submits there are three factors which would warrant the Courts departure from Ms. Ramic's three year sentence. First, Mr. Harcevic will be subject to deportation upon completion of his sentence which addresses the concerns of some of the 18 USC 3553(a)(1) factors, while Ms. Ramic will not be subjected to deportation. Second, Mr. Harcevic's unique background as a Bosnian refugee who saw himself as a provider of the community and wider society makes him a more sympathetic and redeemable character. Third, Mr. Harcevic had clear charitable intentions, as evidenced by his extensive history of giving widely and frequently. His experience

---

[4] See attached report, Exhibit G, of Interview with Jasmin Jasaveric by defense investigator Chris Chang from May 16th, 2017.

as a refugee of war and ethnic cleansing means that charitable giving for Mr. Harcevic would include military support.

    B.  <u>No Fine Should Be Imposed</u>

Per the Guidelines, Probation notes that subject to Mr. Harcevic's ability to pay, the Court may impose a fine sufficient to cover the costs of probation, supervised release and imprisonment. PSR p. 92. As noted above Mr. Harcevic is going to be deported. Ordinarily, counsel would agree that the cost of probation would be a warranted fine, subject to the ability to pay. But in this case, Mr. Harcevic will almost certainly not be remaining in the United States and his deportation will destroy his ability to pay a monetary penalty. For these reasons, a fine is not warranted or appropriate in this circumstance.

## IV. CONCLUSION

For the reasons set forth above, counsel on behalf of the defendant urges this court to impose a sentence of no more than three years and if the court finds that the circumstances of the defendant's case warrants a lower sentence than that imposed by the Court in the *United States v. Ramic*, less.

Respectfully submitted,

      <u>**s/ Charles D. Swift**</u>
      Charles D. Swift, Pro Hac Attorney for the Defendant, Armin Harcevic

      <u>**s/ Catherine McDonald**</u>
      Catherine McDonald, Pro Hac Attorney for the Defendant, Armin Harcevic

**Constitutional Law Center for Muslims in America**
833 East Arapaho Rd., Suite 102

Richardson, TX 75081
972-914-2507
www.clcma.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May, 2019, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send a notice of electronic

filing to all counsel of record.


*/s/ Charles D. Swift*
Chares D. Swift
*Pro Hac for Armin Harcevic*


**s/ Catherine McDonald**
Catherine McDonald,
*Pro Hac Attorney for Armin Harcevic*