**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 09, 2021

Mr. Charles Davidson Swift
CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN AMERICA
Suite 1010
100 N. Central Expressway
Richardson, TX  75080

RE: 19-2755  United States v. Armin Harcevic

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

MVP

Enclosure(s)

cc:   Mr. Joshua D. Champagne
      Mr. Matthew T. Drake
      Mr. Armin Harcevic
      Mr. Gregory J. Linhares
      Mr. Howard J. Marcus
      Ms. Catherine M. McDonald
      Mr. Joseph Palmer
      Ms. Danielle Tarin
      Mr. Kenneth Tihen

     District Court/Agency Case Number(s):   4:15-cr-00049-CDP-5

# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2755
_____

United States of America

*Plaintiff - Appellee*

v.

Armin Harcevic

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 18, 2020
Filed: June 9, 2021

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

In May 2013, Abdullah Ramo Pazara, a Bosnian native and naturalized U.S. citizen, left the United States and traveled to the Middle East to fight in the Syrian Civil War. To support the efforts of ethnic Bosnians fighting the military forces of Syrian President Bashar al-Assad, Pazara solicited aid from fellow Bosnian natives residing throughout the United States, including Armin Harcevic. Using services such as Western Union and PayPal, these individuals transferred money to Ramiz

Hodzic on numerous occasions between August 2013 and September 2014. Hodzic transferred the money he collected to third party intermediaries in other countries who in turn provided the funds to Pazara and other supporters. Hodzic also purchased military supplies and shipped them to Pazara. As relevant to this appeal, Harcevic transferred $1,500 to Hodzic on September 24, 2013.

In September 2014, Pazara died fighting in Syria. A federal grand jury later indicted Harcevic and five others for supporting Pazara during his time in Syria. The detailed indictment charged Harcevic with conspiring to provide material support to terrorists (Count 1), and providing material support to terrorists (Count 3), in violation of 18 U.S.C. §§ 956(a) and 2339A. It alleged that Pazara and individuals from Montenegro and Bosnia and Herzegovina traveled to and fought in Syria, Iraq and elsewhere, with and in support of groups designated by the Secretary of State as foreign terrorist organizations ("FTOs"), see 8 U.S.C. § 1189, including Al-Qa'ida in Iraq (AQI), the Islamic State of Iraq and the Levant (ISIL), and the Islamic State of Iraq and Syria (ISIS).

Defendants moved to dismiss the indictment, arguing they were immune from prosecution because Pazara and his fellow fighters were lawful combatants in the Syrian Civil War, and the lawful combatant immunity defense is jurisdictional. The magistrate judge recommended (i) the motion to dismiss be denied, but (ii) the combatant immunity defense turned on disputed issues of fact that should be submitted to the jury at trial. Ruling on cross objections to these recommendations, the district court[1] adopted the magistrate's factual findings. However, the court concluded that the combatant immunity defense is an issue of law governed by the Third Geneva Convention Relative to the Treatment of Prisoners of War (commonly

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

-2-

referred to as the "GPW");[2] that the GPW preempts the common law defense of combatant immunity referenced in United States v. Palmer, 16 U.S. 610, 635 (1818), on which defendants relied in their motion to dismiss; that the parties agreed the Syrian Civil War was a non-international armed conflict; and therefore that Pazara and his fellow fighters were not lawful combatants within the meaning of Article 2 of the GPW.  United States v. Hodzic, 355 F. Supp. 3d 825, 827-30 (E.D. Mo. 2019). The court relied in part on the Fourth Circuit's recent decision in United States v. Hamidullin, 888 F.3d 62 (4th Cir. 2018), cert. denied, 139 S. Ct. 1165 (2019).

After the district court denied defendants' motion to dismiss and rejected their combatant immunity defense as a matter of law, Harcevic entered an unconditional guilty plea to the offenses charged in Counts 1 and 3.  At the plea hearing, Harcevic admitted that he transferred $1,500 to Hodzic for Pazara's benefit but claimed he did not learn until after the transfer that Pazara had fought for an FTO called Jaish al-Muhajireen wal-Ansar (JMA), rather than for the Free Syrian Army engaged in a civil war against the Assad regime.  When the district court asked Harcevic and counsel whether this meant there was no factual basis for the plea, Harcevic admitted he knew at the time of the transfer that Pazara's combat in Syria constituted murder and maiming outside the United States; the government agreed this satisfied a critical element of an 18 U.S.C. § 956(a) offense.

The district court then noted there was no conditional plea agreement between the parties.  Harcevic's counsel stated his position that an unconditional plea would not waive Harcevic's asserted jurisdiction defense.  The court asked Harcevic if he understood that he could not withdraw his plea if the appellate court disagreed with his jurisdictional argument.  Harcevic acknowledged he did.  The district court then

---

[2]Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135.

accepted the plea and subsequently sentenced Harcevic to 66 months imprisonment. This appeal followed.

On appeal, Harcevic presents a number of issues, all related to his contention that Pazara's alleged status as a lawful combatant prevented the government from prosecuting him and therefore deprived the district court of subject matter jurisdiction. Reviewing the issue *de novo*, we conclude that Harcevic's unconditional guilty plea waived the lawful combatant immunity defense and therefore affirm. See Hamidullin, 888 F.3d at 74 (standard of review).

1. Section 2339A is a provision in Chapter 113B of Title 18, a Chapter entitled "Terrorism." Section 2339A makes it a crime to knowingly or intentionally supply "material support or resources" in violation of one of a lengthy list of statutes that includes 18 U.S.C. § 956. Section 2339A(b)(1) broadly defines "material support or resources." Section 956(a)(1) makes it a crime to "conspire[] with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States."

Harcevic argues that Pazara was entitled to lawful combatant immunity for his fighting in Syria, an immunity "rooted in the customary international law of war." Hamidullin, 888 F.3d at 66. In essence, the immunity grants a lawful combatant protections afforded to prisoners of war:

> Lawful combatants are subject to capture and detention as prisoners of war by opposing military forces. Unlawful combatants are likewise subject to capture and detention, but in addition they are subject to trial and punishment by military tribunals for acts which render their belligerency unlawful.

-4-

Ex parte Quirin, 317 U.S. 1, 31 (1942).  Given this immunity, conspiring with or providing material support or resources to others who are lawful combatants when they commit murder, kidnapping, or maiming outside the United States is, at least arguably, a defense to a § 2339A prosecution based on § 956.[3]

The current doctrine of combatant immunity is codified in the GPW, drafted in the wake of World War II and ratified by every country in the world, including the United States.  Thus, the GPW has "the force of law in the United States." Hamidullin, 888 F.3d at 66, citing U.S. Const. art. VI, cl. 2.  If Article 2 of the GPW applies to a conflict, its lawful combatants are considered prisoners of war entitled to combatant immunity.  Article 4 of the GPW defines combatants entitled to the protections of Article 2 as "Prisoners of war . . . belonging to one of the following categories, who have fallen into the power of the enemy."

Article 2 applies only to international conflicts between Geneva Convention signatories.  Id. at 67.  Article 3 then provides that, in a *non*-international conflict, each signatory shall provide, "as a minimum," a list of lesser protections including refraining from passing sentences that have not been pronounced by "a regularly constituted court."  Federal district courts are "regularly constituted court[s]" within the meaning of Article 3.  See Hamidullin, 888 F.3d at 75, citing 18 U.S.C. § 3231; see generally Hamdan v. Rumsfeld, 548 U.S. 557, 631-33 (2006); id. at 633-35 (plurality opinion); id. at 728 (Alito, J., dissenting).  Thus, district courts have jurisdiction to try combatants captured during non-international armed conflicts.  See 18 U.S.C. § 2338.  The explicit statement in Article 3 that its protections are "a minimum" leads us to question whether the district court was correct in concluding

---

[3]A § 2339A prosecution based upon violation of § 956 requires proof that the defendant provided material support or resources to one or more terrorists, regardless of their affiliation.  By contrast, § 2339B makes it a crime to provide material support or resources to an FTO.  The elements overlap if the terrorist's membership in an FTO deprives him of lawful combatant status.

-5-

that the GPW *precludes* a signatory from extending lawful combatant immunity to combatants in a specific non-international conflict. But we need not decide that issue in this case.

2. Harcevic argues on appeal that his conviction must be reversed because (i) Pazara fought for the Free Syrian Army engaged in a civil war against the Assad regime; (ii) President Obama recognized individuals fighting for the FSA as lawful combatants in the Syrian Civil War; (iii) this action of the Executive Branch granted Pazara lawful combatant immunity; and therefore (iv) the district court lacked jurisdiction over Harcevic's prosecution for supporting Pazara's combat actions.

Harcevic bases his jurisdictional argument on dicta in the concluding portion of Chief Justice Marshall's opinion in United States v. Palmer. In Palmer, the Supreme Court considered whether a federal statute criminalizing piracy on the high seas applied to a robbery committed on the high seas on a vessel belonging to a foreign state against persons who were foreign subjects. The Court concluded the statute did not apply and then, in briefly addressing broader questions, observed:

> It may be said, generally, that if the government remains neutral, and recognizes the existence of a civil war, its courts cannot consider as criminal those acts of hostility which war authorizes, and which the new government may direct against its enemy. To decide otherwise, would be to determine that the war prosecuted by one of the parties was unlawful, and would be to arrange the nation to which the court belongs against that party. This would transcend the limits prescribed to the judicial department.

16 U.S. at 635. We find no hint in this passage that Chief Justice Marshall was addressing the jurisdiction of federal courts to decide cases raising this type of issue. Indeed, in Palmer, the Supreme Court exercised its Article III and statutory jurisdiction to interpret how a federal criminal statute applied to the federal

prosecution at issue. Yet in arguing defendants' motion to dismiss to the district court, Harcevic's attorney asserted, "this is a jurisdictional issue. It was in Palmer. . . . It's a jurisdictional issue, and the reason is that lawful soldiers, you know, people who are engaging in lawful acts of combat, aren't to be tried." Now, appealing the district court's decision that Pazara and his cohorts were not, as a matter of law, lawful soldiers engaging in lawful acts of combat, Harcevic asserts the district court *did not have subject matter jurisdiction to decide the question*. We conclude this assertion is without merit.

"[A] federal court always has jurisdiction to determine its own jurisdiction." United States v. Ruiz, 536 U.S. 622, 628 (2002). In this context, the term "jurisdiction" refers to "the courts' statutory or constitutional *power* to adjudicate the case." United States v. Cotton, 535 U.S. 625, 630 (2002) (emphasis in original) (quotation omitted). The power of federal courts to adjudicate criminal cases flows from 18 U.S.C. § 3231, which vests federal district courts with original jurisdiction over "all offenses against the laws of the United States." United States v. Hayes, 574 F.3d 460, 471-72 (8th Cir. 2009), quoting § 3231. "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). For example, in United States v. Pemberton, we held that a defendant's disputed Indian status did not affect the district court's jurisdiction over a prosecution that required proof he was an Indian; because "a guilty plea admits factual allegations in the indictment that form the basis for federal jurisdiction," Pemberton's guilty plea waived the issue. 405 F.3d 656, 659 (8th Cir. 2005).

In cases dating back to the 1800s, the Supreme Court has distinguished defects in indictments -- errors affecting the merits of a case -- from a federal court's jurisdiction to adjudicate the criminal case. As Justice Holmes put it for a unanimous Court in Lamar v. United States:

-7-

> Jurisdiction is a matter of power, and covers wrong as well as right decisions. . . . [T]he district court, which has jurisdiction of all crimes cognizable under the authority of the United States, acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong. The objection that the indictment does not charge a crime against the United States goes only to the merits of the case.

240 U.S. 60, 64-65 (1916) (citations omitted); see United States v. Williams, 314 U.S. 58, 68-69 (1951) (federal courts do not lack jurisdiction merely because "the facts stated in the indictment do not constitute a crime"); Cotton, 535 U.S. at 630-31.

Here, the indictment charged in great detail that Pazara fought for FTOs like AQI and ISIS, and that Harcevic conspired with Hodzic and others to provide material support and resources to Pazara and others committing acts outside the United States that would be offenses of murder and maiming if committed in this country. The district court had jurisdiction to adjudicate whether the indictment charged Harcevic with conduct that violated 18 U.S.C. §§ 2339A and 956. See 18 U.S.C. § 3231. Like other courts, we agree with the government that Harcevic's assertion that Pazara was entitled to lawful combatant immunity is an affirmative defense. See Hamidullin, 888 F.3d at 72 (the combatant immunity defense "does not deprive the district court of its authority to hear Hamidullin's case"), aff'g 114 F. Supp. 3d 365, 381 (E.D. Va. 2015); accord United States v. Harun, 258 F. Supp. 3d 265, 273 n.6 (E.D.N.Y. 2017), aff'd, 922 F.3d 129 (2d Cir.), cert. denied, 140 S. Ct. 208 (2019); United States v. Khadr, 717 F. Supp. 2d 1215, 1223 (Ct. Mil. Comm'n Rev. 2007); United States v. Lindh, 212 F. Supp. 2d 541, 557 & n.36 (E.D. Va. 2002). To our knowledge, no court has held that lawful combatant immunity is anything other than an affirmative defense, as it was treated in United States v. Farah, 899 F.3d 608, 615 (8th Cir. 2018), cert. denied, 139 S. Ct. 1275 (2019). Harcevic's affirmative defense is an attack on the merits of the government's prosecution rather than the district court's jurisdiction.

3.  The jurisdiction issue is important because it is well-established that "[a] valid guilty plea is an admission of guilt that waives all non-jurisdictional defects and defenses." United States v. Limley, 510 F.3d 825, 827 (8th Cir. 2007); see Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Application of this general rule has raised difficult issues. A divided Supreme Court recently held that a guilty plea "by itself" does not "bar[] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." Class v. United States, 138 S. Ct. 798, 803 (2018). The Court noted that prior decisions had held that a guilty plea bars on appeal claims of some, but not all, "antecedent constitutional violations." Id. A valid plea "relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty." Id. at 805, quoting United States v. Broce, 488 U.S. 563, 573-74 (1989). But a plea does not bar a claim that implicates "the very power of the State" to prosecute the defendant. Id. at 803, quoting Blackledge v. Perry, 417 U.S. 21 (1974), and citing Menna v. New York, 423 U.S. 61 (1975).

Harcevic argues that his lawful combatant immunity defense falls within these exceptions. We disagree. Unlike the defendant in Class, Harcevic does not challenge "the constitutionality of the statute of conviction." United States v. Jennings, 930 F.3d 1024, 1027 (8th Cir. 2019). Harcevic asserts that, like the constitutional claim in Class, his assertion of a lawful combatant immunity defense challenges "the very power of the Government to bring the prosecution and secure the conviction." But this is nothing more than a claim "that the indictment does not charge a crime against the United States," Lamar, 240 U.S. at 65, which does not deprive the district court of jurisdiction to decide the issue and which, like other affirmative fact-based defenses, is waived by a valid unconditional guilty plea.

Harcevic attempts to put a separation-of-powers gloss on the claim by asserting that only the Executive Branch may decide who is entitled to lawful combatant

-9-

immunity.  But here, Congress granted the district court "original jurisdiction . . . of all offenses against the laws of the United States," 18 U.S.C. § 3231, and the Executive Branch invoked the district court's jurisdiction by prosecuting Harcevic for violations of § 2339A and § 956 and then arguing to the court that Harcevic is not entitled to the lawful combatant immunity defense.  Harcevic's unsuccessful assertion of that defense followed by a voluntary plea of guilty does not entitle him to the proverbial get-out-of-jail-free card.

Harcevic's guilty plea "is the equivalent of admitting all material facts alleged in the charge."  United States v. Carnahan, 684 F.3d 732, 737 (8th Cir.), cert. denied, 568 U.S. 1016 (2012); see Pemberton, 405 F.3d at 659.  The indictment alleged that Pazara fought for designated FTOs and engaged in acts that would constitute the offense of murder or maiming if committed in the United States.  Harcevic's assertion that Pazara was involved with the Free Syrian Army and was therefore entitled to lawful combatant immunity directly "contradict[s] the terms of the indictment." Class, 138 S. Ct. at 804; see Broce, 488 U.S. at 576 ("admissions inherent in . . . guilty pleas" foreclose claims contradicting the indictment).  Therefore, Harcevic's unconditional guilty plea failed to preserve his lawful combatant immunity claim for appeal.  See Class, 138 S. Ct. at 805.[4]

The judgment of the district court is affirmed.

_____

---

[4] If Harcevic wished to avoid trial but preserve the issues he is raising on appeal, he could have sought the consent of the government and the court to enter a conditional plea of guilty.  See Fed. R. Crim. P.  11(a)(2); Limley, 510 F.3d at 827; Fed. R. Crim. P. 11, Advisory Committee's Notes on 1983 Amendments.

-10-

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 09, 2021

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

    RE: 19-2755  United States v. Armin Harcevic

Dear Sirs:

    A published opinion was filed today in the above case.

    Counsel who presented argument and appeared on the brief on behalf of the appellant was Charles Davidson Swift, of Richardson, TX.

    Counsel who presented argument and appeared on the brief on behalf of the appellee was Joseph Palmer, USDOJ, of Washington, DC. The following attorney also appeared on the appellee brief; Danielle Tarin, USDOJ, of Washington, DC.

    The judge who heard the case in the district court was Honorable Catherine D Perry. The judgment of the district court was entered on August 9, 2019.

    If you have any questions concerning this case, please call this office.

                                                  Michael E. Gans
                                                  Clerk of Court

MVP

Enclosure(s)

cc:  MO Lawyers Weekly

    District Court/Agency Case Number(s):   4:15-cr-00049-CDP-5